IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER CHAVARRIA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 5174 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| BROTHERS GROUP FLEET, INC., *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The defendants have filed what they call a "Motion for Sanctions as to Mark Sokolowski." For the following reasons, the motion is granted in part, as explained below. [Dkt. #65].

Like all too many discovery related disputes in this court and, indeed throughout the county, this squabble between defendant's attorneys and the plaintiff's back surgeon is about little more than the fuel of almost all litigation – money. The defendants understandably want some discovery as to what goes into a medical bill of over half a million dollars for plaintiff's spinal fusion surgery. Plaintiff's surgeon seems to have been uncooperative as to producing records – he said he didn't have any – so the defendants went down another path. They issued a subpoena for a deposition of the person with the most knowledge as to the billing policies and procedures of Dr. Sokolowski's office, pursuant to Fed.R.Civ.P. 30(b)(6), and attached a rider with what they claim are a number of topics regarding "simple billing policies and procedures." [Dkt. #65, Par. 4].

After reviewing that list of topics, Dr. Sokolowski's office said the person the defendants seemed to want to talk to was Dr. Sokolowski himself. Then they mentioned the topic that brought everyone to court over this: Dr. Sokolowski was an "expert" and entitled to his usual fee: $1250 per

hour and $500 per additional half hour thereafter. Defendants' counsel apparently didn't want to talk to the surgeon *that* badly and balked at his demand.

Eventually – this spat has been going on since September 28th of last year [Dkt. #65-1] – defendants offered to pay $125 per fifteen minute increments of deposition time. Counsel explained that they were only looking for 30 to 60 minutes of Dr. Sokolowski's time. Apart from the fact that estimates like this are seldom, if ever, complied with, Dr. Sokolowski rejected the offer and stood fast on the $1250/$500 demand. The defendants' motion asks that the court "sanction" Dr. Sokolowski by ordering him to accept the $125-per-fifteen-minute rate and work out a time to sit for his deposition.[1] Basically, Dr. Sokolowski thinks he should be treated as an "expert" witness, and the defendants want to treat him – unfairly and improperly in his view – more like a run-of-the-mill Rule 30(b)(6) witness.

Under Fed.R.Civ.P. 26(b)(4)(D), an "expert" witness is entitled to a "reasonable" fee from the examining party. But, while a treating physician like Dr. Sokolowski is undoubtedly an expert as to certain matters, treating physicians are, technically deemed "fact witnesses," and fact witnesses, under 28 U.S.C. § 1821, are not entitled to a reasonable fee, but only to what the law prescribes, namely, $40. They get what the law seems to tacitly concede is the unreasonable fee of $40.[2] Perhaps uncomfortable with the seeming unfairness of the situation, courts have not been

---

[1] This does not seem to be a "sanction" as that term is generally understood and used.

[2] Indeed, physician or not, a person's time is valuable, and the person who was forced to give up that time can never get it back. What could seem more unreasonable to a non-party deponent than being given only forty bucks in exchange for being pulled away from one's work or family or friends to be questioned, perhaps for hours on end, by a lawyer getting several hundreds of dollars an hour – if not more for his or her valuable time. But "fair" or not, that is the system that Congress has established and which we are not at liberty to deviate from.

uniform in deciding what a doctor is entitled to for sitting through a deposition. Some courts have held doctors, as a matter of public policy, should be compensated for their lost income. *See, e.g., McDermott v. FedEx Ground Sys., Inc.*, 247 F.R.D. 58, 60 (Mass. 2007)(collecting "reasonable fees camp" cases). Others feel that doctors shouldn't get what they consider special treatment when everyone else is being forced to sit through depositions for a mere pittance. *See, e.g., Demar v. United States*, 199 F.R.D. 617, 619 (N.D. Ill. 2001)("This Court, however, respectfully disagrees with this reasoning, because it singles out the medical profession for special treatment. While physicians certainly have significant overhead costs and a special expertise, so do a myriad of other professions."); *Mangla v. University of Rochester*, 168 F.R.D. 137, 140 (W.D.N.Y.1996)(doctor would "suffer no more inconvenience than many other citizens called forward to be deposed or testify as a trial witness in a matter in which they have first hand factual knowledge."). But, there is also somewhat of a middle ground where courts distinguish between a doctor who is testifying as to his or her personal knowledge based on treatment of a patient, and a doctor testifying on the basis of outside knowledge or expertise. *See, e.g., Fisher v. Ford Motor Co.*, 178 F.R.D. 195, 197 (N.D. Ohio 1998)("Courts consistently have found that treating physicians are not expert witnesses merely by virtue of their expertise in their respective fields. Only if their testimony is based on outside knowledge, not on personal knowledge of the patient and his or her treatment, may they be deemed experts." (collecting cases)); *Rodriguez ex rel. Fogel v. City of Chicago*, No. 08C4710, 2009 WL 2413750, at *2 (N.D. Ill. Aug. 5, 2009)("'[a] treating physician is not automatically an "expert" witness simply because he is a doctor. . . . Rather, testimony constitutes expert testimony when it "goes beyond the scope of treatment and the observations of the treating physician."'); *see also Hoover v. United States*, No. 01 C 2372, 2002 WL 1949734, at *7 (N.D. Ill. Aug. 22, 2002)("We

3

also recognize that a treating physician sometimes may be asked to offer opinions that go beyond information acquired or opinion reached as a result of the treating relationship."). While it might be the fairest way to go about things, both to physicians and other disinterested third parties who are summoned from their lives to spend a day with someone's attorney, this third path is labor intensive for courts. It certainly would be in this case, as the defendants' two-page rider listing twenty-four separate topics is a hash of personal knowledge-type-topics and outside-knowledge-type topics.

Remember that defendants claim they only need a half-hour or so of Dr. Sokolowski's time. Anyone who reads defendants' brief might think Dr. Sokolowski was being unreasonable. What's 30 minutes? And certainly, it doesn't take a doctor or a surgeon to testify about "simple billing policies and procedures." Indeed, the defendants hinted that they think something like this could be handled by someone in Dr. Sokolowski's records department. [Dkt. #65, Pars. 4, 5]. But the defendants' brief is the sheep's clothing for a wolf of a subpoena rider. Here are the two dozen "simple billing" topics the defendants think an office worker would be able to cover in 30 minutes:

> a) Any and all billing invoices and statements pertaining to WALTER CHAVARRIA, d/o/b: 12/241980, including but not limited to line-item, detailed bill and all CPT billing codes, new patient forms, questionnaires, and correspondence to and from patient, any and all law firms and attorneys, billing services including but not limited to WALTER CHAVARRIA, and any and all insurers;
>
> b) Any and all data pertaining to rate of reimbursements for the procedures billed to WALTER CHAVARRIA, d/o/b: 12/24/1980, including but not limited to amounts of reimbursement provided by health insurers or workers compensation carriers/providers for the period of time of 4/29/2020 to the last date of plaintiffs treatment, including but not limited to any agreements or contracts with said entities in effect for that time period;
>
> c) Any and all contracts, letters of protection (LOP), agreements, assignments as to reimbursement of, payment of, indemnity of, or compensation for said medical treatment with any law firm, attorney, or lending company related to the treatment and care of WALTER CHAVARRIA, d/o/b: 12/24/1980.
>
> d) Any evidence of bills issued and efforts to collect payment for charges as to

plaintiff;

e) Any data, documents or standards used to generate or determine charges for all treatments for WALTER CHAVARRIA, d/o/b: 12/24/1980.

f) All data maintained in accounting or spreadsheets as to the number or patients involved in litigation to the extent said data does not include personal names, dates of birth, SSN, and personal information of other patients.

g) All internal guidelines and policies as to what is billable by the American Medical Association and outpatient surgery center billing guidelines.

h) All existing data and reports as to the recovery and reimbursement of charges to plaintiff.

i) Provide any and all policies and duty to oversee, monitor and review the utilization of services performed in

j) Written policies and procedures for performance of, audit of, injection treatments;

k) Written procedures to monitor the medical necessity of procedures performed, the appropriateness of care, and methods to revise and implement changes in existing policies and procedures;

l) Written policies and procedures as to process of peer review to collect data and evaluate the data to identify acceptable or unacceptable trends including the overutilization of services;

m) Written policies and procedures as to any organizational plan, operating agreement or bylaws regarding the

n) Any contracts and/or electronic communications between Mark Sokolowski, MD, SC or the office for Mark Sokolowski, MD, SC and any third party other than Plaintiff Walter Chavarria or Plaintiffs attorneys Argionis Law, regarding plaintiff, his treatment, any lien as to plaintiffs treatment, and any prescriptions/pharmacy charges and services for plaintiff.

o) All existing data and reports as to the recovery and reimbursement of charges for patients involved in litigation from January 1, 2020-present. (Withdrawn)

p) All internal/patient portal messages as to or regarding plaintiff.

q) Any communications for authorizations by physician to any attorney, law firm, or insurer for authorization of any procedure as to or regarding plaintiff.

r) Any and all data in any practice management software relating directly or indirectly to plaintiffs surgical pr

s) All fee schedules for patients involved in accidents, litigation or represented by legal

5

counsel in effect from 4/29/2020 through present)

t) All fee schedules for patients not involved in an accident, litigation or represented by legal counsel. (in effect date of accident through present) for the procedure(s) performed upon plaintiff.

u) Any and all emails, marketing materials, power points, text and advertising data related to surgical procedures for patients involved in litigation. (in effect 4/29/2020 through present)

v) All intake/referral forms to/from any insurers and law firms in effect date of accident through present)

w) Any and all contract and funding agreements. (in effect 4/29/2020 through present)

x) Any and all data as to the purchase price/cost of the hardware used in the fusion that generated charges of approximately $344,000, including but not limited to the original purchase order or receipt.

[Dkt. #65-1, Pages 4-5/5].

I doubt that defendants' counsel will ask all their questions on these 24 topics in 30 minutes. That kind of alacrity and brevity, while desirable and generally ascertainable, are seldom seen in depositions. Brevity is not, unfortunately, the strong suit of lawyers – or judges for that matter. We are constantly enjoined not to ignore reality and experience and we certainly shall not do so here. Moreover, while some of the two dozen subjects might involve simple billing procedures, the inescapable reality is that some will not no matter what counsel contend and will necessarily involve topics and inquiry into the area of medical expertise. For example, what office manager is legally competent to testify about performing injection treatments or the medical necessity of certain procedures? Certainly, peer review as to the overutilization of certain medical procedures is a topic that would require a physician's expertise. Those topics go beyond knowledge accumulated through treatment. So, basically, and perhaps not surprisingly, there is a gulf between what defendants say in their motion and the subpoena they attach to that motion. As the resolution of the present dispute

between counsel is ultimately a matter of discretion, *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 601 (7th Cir. 2022), that lack of forthrightness – or at least the failure to acknowledge the obvious and indisputable – cut against granting the defendants' motion.[3]

Then we have Dr. Sokolowski. He wants his full $1250 for the first hour, and $500 for each half hour thereafter, because he says he has "specialized expertise" in billing and setting a reasonable fee schedule. [Dkt. #70, Par. 7]. As a number of applicable cases in the $40 fee camp might suggest, so does a plumber in his area of expertise. Dr. Sokolowski's counsel claims "[m]ultiple judges from the Law Division of the Circuit Court of Cook County have repeatedly upheld Dr. Sokolowski's deposition fee schedule as reasonable and customary." [Dkt. #70, Par. 12]. But Dr. Sokolowski's lawyer doesn't bother to cite or attach any of those rulings, and it cannot be stressed enough, "saying so doesn't make it so." *Guerrero v. BNSF Ry. Co.*, 929 F.3d 926, 929 (7th Cir. 2019); *Lacy v. Butts*, 922 F.3d 371, 377 (7th Cir. 2019). *See also Donald v. City of Chicago*, No. 20 C 6815, 2022 WL 3908568, at *1 (N.D. Ill. Aug. 30, 2022)(collecting cases).

If Dr. Sokolowski had support for his position, he was obligated to submit it along with his response. *See Hansel 'N Gretel Brand, Inc. v. Savitsky*, 1997 WL 698179, *2 (S.D.N.Y.

---

[3] As counsel has already been informed [Dkt. #61, at 4-5], and as courts consistently have stressed, it is not the court's job to rewrite their subpoena for them so that it is actually, as they claim, confined to "simple billing" procedures, which it most certainly is not as drafted. *See, e.g., Chavarria v. Bros. Grp. Fleet, Inc.*, No. 21 C 5174, 2022 WL 3543541, at *2 (N.D. Ill. Aug. 18, 2022); *Chapman v. First Index, Inc.*, 2012 WL 13207962, at *4 (N.D. Ill. 2012)("It is not the Court's responsibility to redefine and redraft discovery requests that are obviously overbroad."); *Rotstain v. Trustmark Nat'l Bank*, 2020 WL 6550501, at *7 (N.D. Tex. 2020); *Williams v. Ests. of Hyde Park, LLC*, No. 19 C 2288, 2020 WL 5702297, at *3 (N.D. Ill. Sept. 24, 2020); *Copeland v. C.A.A.I.R., Inc.*, 2020 WL 972754, at *5 (N.D. Okla. 2020); *Moskowitz v. Am. Sav. Bank, F.S.B.*, 2019 WL 7496775, at *3 (D. Haw. 2019); *Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *5 (E.D.N.Y. 2017); *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2015 WL 13238450, at *4 (D. Nev. 2015); *Heim v. BNSF Ry. Co.*, 2014 WL 6949044, at *9 (D. Neb. 2014); *Medicis Pharm. Corp. v. Actavis Mid Atl. LLC*, 282 F.R.D. 395, 398 (D. Del. 2012); *Primm v. Aerofil Tech., Inc.*, 2012 WL 13102523, at n.4 (M.D. Fla. 2012); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 WL 502721, at *8 (D. Colo. 2010); *Dombach v. Allstate Ins. Co.*, 1998 WL 695998, at *7 (E.D. Pa. 1998).

1997)("Motion practice is not a series of trial balloons where you [submit] what you think is sufficient, [you] see how it flies, and if it does not, you go back and try again. If that is the way the system worked we would have motion practice going on forever.").

In the end, neither side has made much of a case for their position – or, one should say, the price point they insist should govern. As already stated, this is just a fight about money, and it would be better suited to a flea market. So, Dr. Sokolowski's office is immediately ordered to work out a date and time to produce a person with knowledge responsive to the subpoena for the topics listed in the subpoena. That much of defendant's motion is granted. That person doesn't have to be Dr. Sokolowski, of course. But given the length and depth of the defendants' topics, it's difficult to see how it could be anyone else. As to the fee, for the first hour, we shall start by splitting the difference between § 1821's "unreasonable" fee ($40 for the entire deposition) and Fed.R.Civ.P. 26(b)(4)(D)'s reasonable fee (perhaps $1250 in this case), which would come to a rate of $645 per hour. We'll use that as a guide. In view of the defendants' claim to the court about the brief amount of time they will need, if the defendants' counsel do manage to wrap things up in 30 minutes, Dr. Sokolowski will be entitled $322.50. If they finish in an hour, he will be entitled to $645. Thereafter, however, he will be entitled to his demand of $500 per each incremental half hour.

For the foregoing reasons, defendants' Motion [Dkt. #65] is granted in part as previously explained.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/1/23

8